IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:19-CV-9-D

JASON R. VITALE, and JOAN VITALE, )
)
            Plaintiffs, )
)
v. ) **ORDER**
)
NATIONSTAR MORTGAGE LLC )
d/b/a Mr. Cooper, and FEDERAL )
NATIONAL MORTGAGE )
ASSOCIATION a/k/a Fannie Mae, )
)
            Defendants. )

      On November 21, 2018, Jason R. Vitale and Joan Vitale (collectively, the "Vitales" or "plaintiffs") filed a complaint in Brunswick County Superior Court against Nationstar Mortgage LLC, d/b/a Mr. Cooper ("Nationstar"), and Federal National Mortgage Association, a/k/a Fannie Mae ("Fannie Mae"; collectively "defendants") [D.E. 1-1]. Plaintiffs allege breach of contract, violations of the North Carolina Debt Collection Act ("NCDCA"), N.C. Gen. Stat. § 75-50 et seq., the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"), N.C. Gen. Stat. § 75-1.1 et seq., the North Carolina Mortgage Debt Collection and Servicing Act ("MDCSA"), N.C. Gen. Stat. § 45-90 et seq., the Real Estate Settlement Procedures Act ("RESPA"), 12 C.F.R. §§ 1024.35, 1024.36, the Truth in Lending Act ("TILA"), 12 C.F.R. §§ 1026.41, 1026.36, and the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, defamation, and negligence. See id. Plaintiffs seek damages, a restraining order, and preliminary and permanent injunctions. See id.

      On January 14, 2019, defendants removed the action to this court [D.E. 1]. On February 5, 2019, defendants moved to dismiss plaintiffs' complaint [D.E. 15] and filed a memorandum in

support [D.E. 16]. See Fed. R. Civ. P. 12(b)(6). On March 26, 2019, plaintiffs responded in opposition [D.E. 21]. On April 17, 2019, defendants replied [D.E. 23]. As explained below, the court grants in part and denies in part defendants' motion to dismiss and dismisses Fannie Mae as a defendant.

I.

The Vitales reside at 9481 Seany Drive NE in Leland, North Carolina (the "Property"), which they acquired on April 27, 2007 with a loan from National Bank of Kansas City ("National Bank"). See id. ¶¶ 7, 23–24. To purchase the Property, the Vitales executed a 30-year note (the "Note") with National Bank in the original principal amount of $182,700.00 with a 6% rate of interest. See id. ¶ 24; Ex. A [D.E. 1-1] 96–97. The Vitales secured the Note with a Deed of Trust, which granted National Bank a lien on the Property. See Compl. [D.E. 1-1] ¶ 25; Ex. B [D.E. 1-1] 97–104.

On November 21, 2012, the Vitales filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of North Carolina (the "Bankruptcy Court"). See Compl. [D.E. 1-1] ¶¶ 3, 21, 28. In their petition, the Vitales listed Bank of America, N.A. ("BANA")—Nationstar's predecessor-in-interest—as a secured creditor holding a secured claim to the Property. See id. ¶¶ 29, 31. On January 9, 2013, BANA filed a proof of claim asserting that the amount due under the loan, as of November 21, 2012, was $176,583.13. See id. ¶ 33; Ex. D [D.E. 1-1] 106–21. On February 11, 2013, the Bankruptcy Court confirmed the Chapter 13 plan. See Compl. [D.E. 1-1] ¶ 36; Ex. F [D.E. 1-1] 126. Under the order, BANA's claim would be paid outside of the Chapter 13 plan directly to BANA. See Compl. [D.E. 1-1] ¶ 34; Ex. E [D.E. 1-1] 122–25.

On April 17, 2013, BANA transferred its claim to Nationstar effective April 1, 2013. See Compl. [D.E. 1-1] ¶ 38; Ex. H [D.E. 1-1] 128. On September 4, 2014, Nationstar moved for

2

"relief from the automatic stay for lack of adequate protection" under 11 U.S.C. § 362(e). See Compl. [D.E. 1-1] ¶¶ 39–40. Nationstar asserted that the Vitales owed at least $21,229.23, consisting of nineteen missed monthly installments of $1,146.57. See id. ¶ 41.[1] On September 3, 2015, Nationstar notified the Vitales that they were eligible for a loan modification. See id. ¶ 43; Ex. J [D.E. 1-1] 129. On September 14, 2015, the Vitales executed a loan modification agreement with Nationstar, which the Bankruptcy Court approved on June 20, 2016. See Compl. [D.E. 1-1] ¶¶ 45–49; Ex. K [D.E. 1-1] 130–33; Ex. L [D.E. 1-1] 134–39; Ex. M [D.E. 1-1] 139. As part of the modification, the parties agreed that the Vitales would owe monthly installment payments of $832.26 for principal and interest. See Compl. [D.E. 1-1] ¶ 47; Ex. K [D.E. 1-1] 131. The agreement also contained a provision concerning the payment of other outstanding obligations, including escrow items. See Ex. K [D.E. 1-1] 131. When the Vitales moved to approve the loan modification agreement, however, the Vitales stated that they would owe a monthly payment of $832.26 for "principal, interest, and escrow." Ex. L [D.E. 1-1] 134 (emphasis added). Nationstar neither objected to nor moved to amend the order. Cf. Compl. [D.E. 1-1] ¶¶ 45–49.

On August 9, 2016, the Bankruptcy Court entered an order of discharge, which granted the Vitales a discharge under section 1328(a). See Compl. [D.E. 1-1] ¶ 50; Ex. N [D.E. 1-1] 140. On October 21, 2016, the Vitales' Chapter 13 trustee filed a final report and account. See Compl. [D.E. 1-1] ¶ 53. On November 22, 2016, the Bankruptcy Court entered the final decree in the Vitales' bankruptcy case, which discharged the trustee and closed the case. See id.

On September 28, 2016, Nationstar notified the Vitales that they were in default. See id. ¶ 54; Ex. P [D.E. 1-1] 143. Nationstar asserted that the Vitales' monthly payment was $1,052.63 and

---

[1] On November 5, 2015, Nationstar withdrew its motion. See Compl. [D.E. 1-1] ¶ 42.

3

that Nationstar was holding $686.00 as an "unapplied balance." See Compl. [D.E. 1-1] ¶¶ 55–56; Ex. P [D.E. 1-1] 143. In response, the Vitales argued to Nationstar that they were not in default under the loan modification agreement. See Compl. [D.E. 1-1] ¶¶ 59–60. The parties continued to communicate about the loan modification agreement. See id. ¶¶ 61–66.

Beginning in February 2017, Nationstar rejected the Vitales' monthly installment payments. See id. ¶¶ 67–68. On March 22, 2017, Nationstar terminated the Vitales' online account. See id. ¶¶ 71, 99–100. On March 31, 2017, Nationstar appointed a substitute trustee and initiated a special foreclosure proceeding with the Brunswick County Clerk of Superior Court. See id. ¶¶ 72–77. In April 2017, the Vitales received multiple notices of the foreclosure proceeding, some of which were affixed to the Property. See id. ¶¶ 78–81; Ex. Y [D.E. 1-1] 158; Ex. Z [D.E. 1-1] 158; Ex. AA [D.E. 1-1] 159. Nationstar also called the Vitales numerous times in April and May 2017 and instructed them to contact Nationstar about their alleged defaults. See Compl. [D.E. 1-1] ¶¶ 84–94.[2]

On September 21, 2017, the Vitales through counsel sent Nationstar a qualified written request ("QWR") to request more information about the loan. See id. ¶¶ 96–97; Ex. CC [D.E. 1-1] 160–65. On October 16, 2017, the Vitales' lawyer received Nationstar's response to the QWR. See Compl. [D.E. 1-1] ¶¶ 103–11. According to the Vitales, Nationstar's response omitted several items that the QWR had requested. See id. ¶ 109. The Vitales also sent two notices of error ("NOE") to Nationstar. See id. ¶¶ 101–02, 114–16.

The Vitales allege several sources of damages. First, the Vitales contend that Nationstar has "continuously furnished inaccurate, derogatory, false, misleading, and incorrect information to

---

[2] Despite these allegations, the Vitales also allege that Nationstar never sent them "any regular monthly statements, annual mortgage interest statements, or annual escrow statements . . . or any other similar notice that provide information or disclosure of any late fees, expenses, escrow disbursements, or crediting of payments made by" the Vitales toward the loan. Id. ¶ 95.

4

consumer reporting agencies ("CRAs")." Id. ¶¶ 125–28, 131. Second, the Vitales allege that, because Nationstar sent monthly mortgage statements to the Vitales that contained "false, incorrect, misleading, and inaccurate statements, information, and representations," they suffered mental and emotional distress, lost wages, degradation of credit scores, damage to character and reputation, and loss of ability to refinance the Property. See id. ¶¶ 129–30, 132–65. Finally, the Vitales allege that Nationstar's collection efforts have negatively affected the Vitales' quality of life, including by causing harm to the Vitales' martial relationship and emotional distress to the Vitales' youngest child, who has special needs. See id. ¶¶ 166–72.

II.

The parties dispute whether the loan modification agreement binds the Vitales and Nationstar. Debtors in bankruptcy cases under Chapter 13 of the United States Bankruptcy Code must file a plan. See 11 U.S.C. § 1321. The debtor's plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims." Id. § 1322(b)(2); see Till v. SCS Credit Corp., 541 U.S. 465, 475 & n.11 (2004); Nobelman v. Am. Sav. Bank, 508 U.S. 324, 327 (1993); Hurlburt v. Black, 925 F.3d 154, 159–60 (4th Cir. 2019) (en banc); Burkhart v. Grigsby, 886 F.3d 434, 437–38 (4th Cir. 2018); Anderson v. Hancock, 820 F.3d 670, 673 (4th Cir. 2016). Section 1322(b(2) prohibits "any fundamental alteration in a debtor's obligations, e.g., lowering monthly payments, converting a variable interest rate to a fixed interest rate, or extending the repayment term of a note." Anderson, 820 F.3d at 673–74 (quotation omitted); see Hurlburt, 925 F.3d at 160; In re Litton, 330 F.3d 636, 643–44 (4th Cir. 2003). "Claims secured by security interests in the debtor's principal residence may be modified only if the last payment on the original payment schedule is due before the due date of

5

the last payment under the plan . . . ." Anderson, 820 F.3d at 673 (quotation omitted); see 11 U.S.C. § 1322(c)(2); Hurlburt, 925 F.3d at 160.

A party may waive statutory protections, including the anti-modification provision of section 1322(b)(2), by consenting to an otherwise impermissible modification. See In re Hurlburt, 572 B.R. 160, 170 (Bankr. E.D.N.C. 2017), rev'd on other grounds, Hurlburt, 925 F.3d at 167; In re Smiley, 559 B.R. 215, 217 (Bankr. N.D. Ind. 2016); In re Daniels, 91 B.R. 51, 52 (Bankr. N.D. Ill. 1988). Although Nationstar actively participated in the bankruptcy proceeding, it did not object to the Vitales' plan. Thus, Nationstar implicitly consented to the modification and has not properly requested a modification of the plan. See In re Smiley, 559 B.R. at 217 (collecting cases); Corliss Moore & Assocs., LLC v. Credit Control Servs., Inc., 497 B.R. 219, 228–29 (E.D. Va. 2013); see also 11 U.S.C. § 1327; 11 U.S.C. § 1329; cf. Mort Ranta v. Gorman, 721 F.3d 241, 248 (4th Cir. 2013) ("Even after a plan is confirmed, the debtor is always free to propose a modification to the plan, which could substantially modify the terms of repayment and the rights of creditors. . . . Indeed, even the Trustee and the creditors may propose a modification."); In re Murphy, 474 F.3d 143, 148–50 (4th Cir. 2007); In re Daewoo Motor Am., Inc., 488 B.R. 418, 426–27 (C.D. Cal. 2011). Thus, the Bankruptcy Court's modification order is valid and binds the parties.

III.

A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency. See Ashcroft v. Iqbal, 556 U.S. 662, 677–80 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–63 (2007); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). To withstand a Rule 12(b)(6) motion, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is

6

plausible on its face." Iqbal, 556 U.S. at 678 (quotation omitted); see Twombly, 550 U.S. at 570; Giarratano, 521 F.3d at 302. In considering the motion, the court must construe the facts and reasonable inferences "in the light most favorable to the [nonmoving party]." Massey v. Ojaniit, 759 F.3d 343, 352 (4th Cir. 2014) (quotation omitted); see Clatterbuck v. City of Charlottesville, 708 F.3d 549, 557 (4th Cir. 2013), abrogated on other grounds by Reed v. Town of Gilbert, 135 S. Ct. 2218 (2015). A court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 678–79. Rather, plaintiffs' allegations must "nudge[] their claims," Twombly, 550 U.S. at 570, beyond the realm of "mere possibility" into "plausibility." Iqbal, 556 U.S. at 678–79.

When evaluating a motion to dismiss, a court considers the pleadings and any materials "attached or incorporated into the complaint." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011); see Fed. R. Civ. P. 10(c); Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 165–66 (4th Cir. 2016); Thompson v. Greene, 427 F.3d 263, 268 (4th Cir. 2005). A court also may consider a document submitted by a moving party if it is "integral to the complaint and there is no dispute about the document's authenticity" without converting the motion into one for summary judgment. Goines, 822 F.3d at 166. Additionally, a court may take judicial notice of public records when evaluating a motion to dismiss for failure to state a claim. See, e.g., Fed. R. Evid. 201(d); Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

The motion to dismiss requires the court to consider the plaintiffs' state law claims, and the parties agree that North Carolina law applies to this action. Accordingly, this court must predict how the Supreme Court of North Carolina would rule on any disputed state-law issue. See Twin City Fire

7

Ins. Co. v. Ben Arnold-Sunbelt Beverage Co. of S.C., 433 F.3d 365, 369 (4th Cir. 2005). In doing so, the court must look first to opinions of the Supreme Court of North Carolina. See id.; Stahle v. CTS Corp., 817 F.3d 96, 100 (4th Cir. 2016). If there are no governing opinions from that court, this court may consider the opinions of the North Carolina Court of Appeals, treatises, and "the practices of other states." Twin City Fire Ins. Co., 433 F.3d at 369 (quotation omitted).[3] In predicting how the highest court of a state would address an issue, this court must "follow the decision of an intermediate state appellate court unless there [are] persuasive data that the highest court would decide differently." Toloczko, 728 F.3d at 398 (quotation omitted); Hicks v. Feiock, 485 U.S. 624, 630 & n.3 (1988). Moreover, in predicting how the highest court of a state would address an issue, this court "should not create or expand a [s]tate's public policy." Time Warner Entm't-Advance/Newhouse P'ship v. Carteret-Craven Elec. Membership Corp., 506 F.3d 304, 314 (4th Cir. 2007) (alteration and quotation omitted); Day & Zimmerman, Inc. v. Challoner, 423 U.S. 3, 4 (1975) (per curiam); see Wade v. Danek Med., Inc., 182 F.3d 281, 286 (4th Cir. 1999).

A.

Under North Carolina law, a breach of contract claim has two elements: (1) the existence of a valid contract and (2) a breach of the terms of that contract. See McLamb v. T.P. Inc., 173 N.C. App. 586, 588, 619 S.E.2d 577, 580 (2005); Cater v. Barker, 172 N.C. App. 441, 445, 617 S.E.2d 113, 116 (2005), aff'd, 360 N.C. 357, 625 S.E.2d 778 (2006) (per curiam); Poor v. Hill, 138 N.C. App. 19, 26, 530 S.E.2d 838, 845 (2000). "Non-performance of a valid contract is a breach thereof unless the person charged shows some valid reason which may excuse the non-performance; and the burden of doing so rests upon him." Cater, 172 N.C. App. at 447, 617 S.E.2d at 117 (quotation and

---

[3] North Carolina does not have a mechanism to certify questions of state law to its Supreme Court. See Town of Nags Head v. Toloczko, 728 F.3d 391, 397–98 (4th Cir. 2013).

8

alterations omitted); Blount-Midyette v. Aeroglide Corp., 254 N.C. 484, 488, 119 S.E.2d 225, 228 (1961); see Michael Borovsky Goldsmith LLC v. Jewelers Mut. Ins. Co., 359 F. Supp. 3d 306, 311 (E.D.N.C. 2019); Barbour v. Fid. Life Ass'n, 361 F. Supp. 3d 565, 572 (E.D.N.C. 2019); Abbington SPE, LLC v. U.S. Bank, Nat'l Assoc., 352 F. Supp. 3d 508, 517 (E.D.N.C. 2016), aff'd, 698 F. App'x 750 (4th Cir. 2017) (per curiam) (unpublished). "[A] lender is only obligated to perform those duties expressly provided for in the loan agreement to which it is a party." Camp v. Leonard, 133 N.C. App. 554, 560, 515 S.E.2d 909, 913 (1999); see Dallaire v. Bank of Am., N.A., 367 N.C. 363, 368, 760 S.E.2d 263, 266–67 (2014); Hetzel v. JPMorgan Chase Bank, N.A., No. 4:13-CV-236-BO, 2017 WL 603286, at *8 (E.D.N.C. Feb. 14, 2017) (unpublished).

Plaintiffs have plausibly alleged that Nationstar breached its contract with them, as modified by the Chapter 13 plan and loan modification order. Accordingly, the court denies defendants' motion to dismiss plaintiffs' breach of contract claim.

B.

As for plaintiffs' NCDCA claim, "[t]he NCDCA prohibits debt collectors from engaging in unfair debt collection practices, including the use of threats, coercion, harassment, unreasonable publications of the consumer's debt, deceptive representations to the consumer, or other unconscionable means." Ross v. FDIC, 625 F.3d 808, 817 (4th Cir. 2010); see N.C. Gen. Stat. §§ 75-50–75-56. An NCDCA claim has three threshold requirements. See Davis Lake Cmty. Ass'n v. Feldmann, 138 N.C. App. 292, 295, 530 S.E.2d 865, 868 (2000); Reid v. Ayers, 138 N.C. App. 261, 263, 531 S.E.2d 231, 233 (2000). First, the "obligation owed must be a 'debt;' second, the one owing the obligation must be a 'consumer;' and third, the one trying to collect the obligation must be a 'debt collector.'" Reid, 138 N.C. App. at 263, 531 S.E.2d at 233; see Glenn v. FNF Servicing, Inc., No. 5:12-CV-703-D, 2013 WL 4095524, at *3 (E.D.N.C. Aug. 13, 2013) (unpublished).

9

If a plaintiff meets these threshold requirements, a plaintiff must establish the elements of a UDTPA claim: (1) an unfair or deceptive act (2) in or affecting commerce (3) proximately causing injury. See Ross, 625 F.3d at 817; Campbell v. Wells Fargo Bank, N.A., 73 F. Supp. 3d 644, 649 (E.D.N.C. 2014); Feldmann, 138 N.C. App. at 296, 530 S.E.2d at 868; Reid, 138 N.C. App. at 266, 531 S.E.2d at 235.

Plaintiffs have plausibly alleged that Nationstar contacted them after Nationstar had been notified by plaintiffs' attorney that the attorney represented plaintiffs. See N.C. Gen. Stat. § 75-55(3). Moreover, plaintiffs have plausibly alleged that they suffered injury as a result of Nationstar's conduct. Accordingly, the court denies defendants' motion to dismiss plaintiffs' NCDCA claim.

As for plaintiffs' UDTPA claim, the NCDCA "exclusively constitute[s] the unfair or deceptive acts or practices proscribed by [the UDTPA]" in debt collection matters. N.C. Gen. Stat. § 75-56(a). In other words, the NCDCA "supplants the UDTPA" in the debt collection context. Hester v. Dish Network, LLC, No. 7:14-CV-282-D, 2016 WL 4595690, at *5 n.3 (E.D.N.C. Sept. 2, 2016) (unpublished); see Musenge v. SmartWay of the Carolinas, LLC, No. 3:15-cv-153-RJC-DCK, 2018 WL 4440718, at *5 (W.D.N.C. Sept. 17, 2018) (unpublished); Ross v. Washington Mut. Bank, 566 F. Supp. 2d 468, 479 (E.D.N.C. 2008), aff'd sub nom., Ross v. FDIC, 625 F.3d 808 (4th Cir. 2010); DIRECTV, Inc. v. Cephas, 294 F. Supp. 2d 760, 765 (M.D.N.C. 2003). Accordingly, the court grants defendants' motion to dismiss plaintiffs' UDTPA claim to the extent that plaintiffs assert such a claim.

C.

The MDCSA applies to servicers of home loans "regardless of whether the loan is considered in default or the borrower is in bankruptcy or the borrower has been in bankruptcy[.]" N.C. Gen. Stat. § 45-91. A servicer is "the person responsible for servicing of a loan[,]" which involves

10

receiving any scheduled periodic payments from a borrower under the terms of the loan and other activities as required by a loan. 12 U.S.C. § 2605(i)(2)–(3); N.C. Gen. Stat. § 45-90(2). The MDCSA governs activities including accessing fees, processing payments, publishing statements, handling escrow funds, and responding to borrowers' requests for information. See N.C. Gen. Stat. §§ 45-91–45-93.

As for section 45-91, plaintiffs have plausibly alleged that they did not receive statements in violation of N.C. Gen. Stat. § 45-91(1)(b). Cf. 12 C.F.R. § 1026.41(b)–(d). Moreover, plaintiffs have plausibly alleged injury as a result of Nationstar's violations. Cf. Polanco v. HSBC Bank USA Nat'l Ass'n, No. 3:17-CV-466-GCM, 2019 WL 2590964, at *8 (W.D.N.C. June 21, 2019) (unpublished); Cole v. Wells Fargo Bank, N.A., No. 1:15-cv-39-MR, 2016 WL 737943, at *12 (W.D.N.C. Feb. 23, 2016) (unpublished). As for section 45-92 or section 45-93, plaintiffs do not plausibly allege that Nationstar violated either provision. Accordingly, the court denies defendants' motion to dismiss plaintiffs' MDCSA claim under section 45-91, but grants defendants' motion to dismiss any MDCSA claim under section 45-92 or section 45-93.

D.

"RESPA is a consumer protection statute that regulates the real estate settlement process by placing various obligations on mortgage servicers." Nelson v. Nationstar Mortg. LLC, No. 7:16-CV-307-BR, 2017 WL 1167230, at *3 (E.D.N.C. Mar. 28, 2017) (unpublished) (quotation and alteration omitted); see 12 U.S.C. § 2601. When a borrower notifies a servicer of a possible error, servicers must complete a reasonable investigation, provide the borrower with a written notification of its determination of whether an error occurred, and provide the borrower with all documents and information that the servicer relied on in making its determination. See 12 C.F.R. § 1024.35(e); see Wirtz v. Specialized Loan Servicing, LLC, 886 F.3d 713, 717 (8th Cir. 2018); Warren v. Green Tree

11

Servicing, LLC, 663 F. App'x 703, 705 (10th Cir. 2016) (unpublished). Courts disagree about whether RESPA and section 1024.35 create a private right of action for alleged violations of section 1024.35. See, e.g., Lage v. Ocwen Loan Servicing LLC, 839 F.3d 1003, 1007 (11th Cir. 2016); Lucas v. New Penn Fin., LLC, No. 17-cv-11472-ADB, 2019 WL 404033, at *4 (D. Mass. Jan. 31, 2019) (unpublished) (collecting cases); Jones v. Wells Fargo Bank, N.A., No. ELH-18-8, 2018 WL 4382916, at *10 (D. Md. Sept. 12, 2018) (unpublished); Miller v. HSBC Bank U.S.A., N.A., No. 13-Civ-7500, 2015 WL 585589, at *11 (S.D.N.Y. Feb. 11, 2015) (unpublished).

Even assuming that RESPA and section 1024.35 create a private right of action, plaintiffs fail to plausibly allege that Nationstar failed to conduct a reasonable investigation. Relatedly, plaintiffs fail to plausibly allege that Nationstar ought to have corrected any error. Thus, the court grants defendants' motion to dismiss plaintiffs' RESPA claims.

As for plaintiffs' claims against Fannie Mae, even assuming Fannie Mae is a "servicer" under federal or North Carolina law, plaintiffs' complaint does not plausibly allege that Fannie Mae is liable, either directly or vicariously, for any of the conduct alleged in the complaint. Moreover, plaintiffs did not respond to defendants' argument that Fannie Mae is not vicariously liable for any of the alleged misconduct. Accordingly, the court dismisses all claims against Fannie Mae and dismisses Fannie Mae as a defendant.

E.

Plaintiffs raise four claims under TILA: (1) failure to provide plaintiffs with a timely and accurate payoff statement or quote in violation of 12 C.F.R. § 1026.36(c)(3); (2) failure to properly credit payments made under the loan documents in violation of 12 C.F.R. § 1026.36(c)(1); (3) failure to disclose to plaintiffs the total amounts of funds held in a suspense account on periodic statements provided to plaintiffs in violation of 12 C.F.R. § 1026.36(c)(1)(ii); and (4) failure to send periodic

12

statements after plaintiffs' bankruptcy discharge in violation of 12 C.F.R. § 1026.41. TILA provides a cause of action only against creditors, not loan servicers. See 15 U.S.C. § 1640(a); Meaney v. Nationstar Mortg., No. TDC-16-2959, 2018 WL 1014927, at *8 (D. Md. Feb. 21, 2018) (unpublished). Nationstar argues only that plaintiffs fail to plausibly allege a concrete injury, and Nationstar appears to concede that it has violated some of the cited regulations. See [D.E. 16] 20–21 ("[A]ny technical failure with respect to Nationstar's monthly [(sic)] are ancillary and inconsequential.").

Under 12 C.F.R. § 1026.36(c)(3), a creditor "must provide an accurate statement of the total outstanding balance that would be required to pay the consumer's obligation in full as of a specified date." 12 C.F.R. § 1026.36(c)(3); see Aghazu v. Severn Sav. Bank, No. PJM 15-1529, 2016 WL 808823, at *4–6 (D. Md. Mar. 2, 2016) (unpublished); Boardley v. Household Fin. Corp. III, 39 F. Supp. 3d 689, 705 (D. Md. 2014). "The statement shall be sent within a reasonable time, but in no case more than seven business days, after receiving a written request from the consumer or any person acting on behalf of the consumer." 12 C.F.R. § 1026.36(c)(3). Plaintiffs have not plausibly alleged that Nationstar violated section 1026.36(c)(3).

Under 12 C.F.R. § 1026.36(c)(1), "[n]o servicer shall fail to credit a periodic payment to the consumer's loan account as of the date of receipt, except when a delay in crediting does not result in any charge to the consumer or in the reporting of negative information to a consumer reporting . . . ." Id. § 1026.36(c)(1)(i). "A periodic payment . . . is an amount sufficient to cover principal, interest, and escrow (if applicable) for a given billing cycle." Id. "If a servicer specifies in writing requirements for the consumer to follow in making payments, but accepts a payment that does not conform to the requirements, the servicer shall credit the payment as of five days after receipt." Id. § 1026.36(c)(1)(iii). Plaintiffs have plausibly alleged that Nationstar failed to properly credit

13

payments in violation of section 1026.36(c)(1). See Mastin v. Ditech Fin., LLC, No. 3:17CV368, 2018 WL 524871, at *4–5 (E.D. Va. Jan. 23, 2018) (unpublished).

Under 12 C.F.R. § 1026.36(c)(1)(ii), "[a]ny servicer that retains a partial payment . . . in a suspense or unapplied funds account shall" both disclose to the consumer the amount in the account and, upon accumulation of sufficient funds to cover a periodic payment, shall treat such funds as a periodic payment. Id. § 1026.36(c)(1)(ii). Plaintiffs have plausibly alleged that Nationstar did not properly disclose or credit partial payments in violation of section 1026.36(c)(1)(ii).

Finally, under 12 C.F.R. § 1026.41, a servicer "shall provide the consumer, for each billing cycle, a periodic statement[.]" Id. § 1026.41(a)(2). Plaintiffs have plausibly alleged that Nationstar failed to send plaintiffs periodic statements in violation of 12 C.F.R. § 1026.41.

As for damages, plaintiffs have plausibly alleged that they suffered actual injuries because of Nationstar's alleged TILA violations. Accordingly, the court denies in part and grants in part defendants' motion to dismiss plaintiffs' TILA claims, and dismisses plaintiffs' TILA claim under section 1026.36(c)(3).

F.

The TCPA makes it unlawful for any person

> to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call, unless such call is made solely to collect a debt owed to or guaranteed by the United States . . . .

See 47 U.S.C. § 227(b)(1)(A); Cunningham v. Gen. Dynamics Info. Tech., Inc., 888 F.3d 640, 644–45 (4th Cir. 2018); Galbreath v. Time Warner Cable, Inc., No. 7:14-CV-61-D, 2015 WL 9450593, at *2 (E.D.N.C. Dec. 22, 2015) (unpublished). The TCPA defines an automatic telephone

14

dialing system ("ATDS") as "equipment which has the capacity— (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). To state a claim under the TCPA for calls made to a cell phone, a plaintiff must allege that (1) a call was placed to a cell or wireless phone (2) by the use of any automatic dialing system or leaving an artificial or prerecorded message (3) without prior consent of the recipient. See id. § 227(b)(1)(A); Brown v. Credit Mgmt., LP, 131 F. Supp. 3d 1332, 1343 (N.D. Ga. 2015).

Plaintiffs have not plausibly alleged that they did not initially consent to receive phone calls from Nationstar. See Galbreath, 2015 WL 9450593, at *2 (noting that providing a cell phone number to a creditor constitutes one means of consent); cf. Brown, 131 F. Supp. 3d at 1345–46. Accordingly, the court dismisses plaintiffs' TCPA claim.

G.

Plaintiffs did not respond to defendants' motion to dismiss their defamation claim. Thus, plaintiffs have abandoned the claim. See, e.g., Carmon v. Pitt Cty., No. 5:18-CV-433-D, 2019 WL 938875, at *4 (E.D.N.C. Feb. 26, 2019) (unpublished); Bronitsky v. Bladen Healthcare, LLC, No. 7:12-CV-147-BO, 2013 WL 5327447, at *1 (E.D.N.C. Sept. 20, 2013) (unpublished). Accordingly, the court grants defendants' motion to dismiss plaintiffs' defamation claim.

H.

"Negligence is the failure to exercise proper care in the performance of a legal duty which the defendant owed the plaintiff under the circumstances surrounding them." Dunning v. Forsyth Warehouse Co., 272 N.C. 723, 725, 158 S.E.2d 893, 895 (1968); Moore v. Moore, 268 N.C. 110, 112, 150 S.E.2d 75, 77 (1966); Coulter v. Catawba Cty. Bd. of Educ., 189 N.C. App. 183, 185, 657 S.E.2d 428, 430 (2008). To establish actionable negligence, a plaintiff must show "(1) defendant

15

failed to exercise due care in the performance of some legal duty owed to plaintiff under the circumstances; and (2) the negligent breach of such duty was the proximate cause of the injury." Whisnant v. Carolina Farm Credit, 204 N.C. App. 84, 93–94, 693 S.E.2d 149, 156 (2010); see Ward v. Carmona, 368 N.C. 35, 37, 770 S.E.2d 70, 72 (2015); Bridges v. Parrish, 366 N.C. 539, 541, 742 S.E.2d 794, 796 (2013).

"In an ordinary debtor-creditor transaction, the lender's duties are defined by the loan agreement and do not extend beyond its terms." Arnesen v. Rivers Edge Golf Club & Plantation, Inc., 368 N.C. 440, 449, 781 S.E.2d 1, 8 (2015); see Dallaire, 367 N.C. at 368, 760 S.E.2d at 266–67; Camp, 133 N.C. App. at 560, 515 S.E.2d at 913. Plaintiffs do not allege any duty of care that Nationstar owed or breached beyond the loan agreement. See Hacker v. Wells Fargo Bank, N.A., No. 4:15-CV-163-BR, 2016 WL 5678341, at *6 (E.D.N.C. Sept. 30, 2016) (unpublished). Accordingly, the court grants defendants' motion to dismiss plaintiffs' negligence claim.

I.

Plaintiffs did not respond to defendants' motion to dismiss their requests for a restraining order and injunctions. Thus, plaintiffs have abandoned the claim. See, e.g., Carmon, 2019 WL 938875, at *4; Bronitsky, 2013 WL 5327447, at *1. Even assuming otherwise and viewing plaintiffs' request under the governing standard, plaintiffs have not demonstrated that they are entitled to a temporary restraining order or a permanent or preliminary injunction. See Fed. R. Civ. P. 65; Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008); Real Truth About Obama, Inc. v. FEC, 575 F.3d 342, 346 (4th Cir. 2009), vacated on other grounds, 559 U.S. 1089 (2010), reissued in relevant part, 607 F.3d 355 (4th Cir. 2010) (per curiam); U.S. Dep't of Labor v. Wolf Run Mining Co., 452 F.3d 275, 281 n.1 (4th Cir. 2006). Accordingly, the court grants defendants' motion to dismiss plaintiffs' claim for a restraining order and injunctions.

III.

In sum, the court GRANTS in part and DENIES in part defendants' motion to dismiss plaintiffs' complaint [D.E. 15]. Specifically, the court GRANTS the motion to dismiss the UDTPA claim, GRANTS the motion to dismiss the RESPA claim, GRANTS the motion to dismiss the TCPA claim, GRANTS the motion to dismiss the defamation claim, GRANTS the motion to dismiss the negligence claim, and GRANTS the motion to dismiss plaintiffs' claim for a restraining order and injunctions. The court DENIES the defendants' motion to dismiss the breach of contract claim, DENIES the motion to dismiss the NCDCA claim, DENIES the motion to dismiss the MDCSA claim, DENIES the motion to dismiss the TILA claim, and DISMISSES Fannie Mae as a defendant. The parties shall participate in a court-hosted settlement conference with United States Magistrate Judge Gates.

SO ORDERED. This 9 day of September 2019.

JAMES C. DEVER III
United States District Judge